LUZ MARÍA VÉLEZ ROMÁN and her husband MIGUEL DEL CARMEN RODRÍGUEZ FRANQUI, Plaintiffs and Appellees, v. ANGEL FRANCISCO FRANQUI ET AL., Defendants and Appellants.

No. 12112.    Submitted April 29, 1960.—Decided May 31, 1961.

*Ramón Ferrer Delgado* for appellants.   *E. Martínez Rivera* and *Edelmiro Martínez, Jr.* for appellees.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Luz María Vélez Román, married to Miguel del Carmen Rodríguez Franqui, known as Carmelo Rodríguez Franqui and born on July 17, 1912 was the natural child of Juan Bautista Vélez Arce and Tomasa Román.   She has lived since her birth with her natural parents, on an estate belonging to Juan Bautista Vélez Arce.   It seems that after she married Carmelo Rodríguez Franqui on December 26, 1935, she continued to live with her natural parents and with her husband on the same estate.

The natural father Juan Bautista Vélez Arce was a *recognized* (natural) child of Rufino Vélez and Julia Arce, born on June 24, 1875, according to the baptism certificate or a *legitimate* child of Rufino Vélez and Julia Arce, born on 1872, according to the death certificate.   Juan Bautista Vélez Arce died on August 17, 1943, and after the death of the natural father, his daughter continued in possession of her father's estate, as the presumptive owner of the property because she was Juan Bautista Vélez Arce's sole heirs.

On April 9, *1954*, a certain informer named Antonio González Morales, went to the Registry of Vital Statistics in Camuy to register the birth of Rosario Franqui Arce, daughter of Ramón Franqui and Julia Arce, born on January 6, *1889*. Rosario Franqui Arce died on November 20, 1930.   In view of the foregoing, the birth of Rosario Franqui Arce is recorded

sixty-five years after its occurrence and twenty-four years after her death.

It is significant that in the statements given by the informer in order to record said birth, the facts regarding the grandparents of Rosario Franqui Arce were not included, while on the contrary the baptism certificate of Juan Bautista Vélez Arce shows that the paternal grandparents of the baptized child were Juan Vélez and Concepción Gerena and the maternal grandmother was Juana de Arce. The same appears in the death certificates presented by the parties. Since the death certificate of Rosario Franqui Arce was presented in abstract form and not in a full literal copy, her predecessors are not mentioned contrary to the death certificate of Juan Bautista Vélez Arce. It is also significant that the birth certificate of Rosario Franqui Arce does not specify whether she was a legitimate or a recognized natural child or an illegitimate child of Julia Arce.

After having recorded the birth of Rosario Franqui Arce, her son Angel Francisco and her daughters Celia and Virginia Franqui, defendants and appellants herein, appealed to the Superior Court, Arecibo Part, in May, 1954, requesting to be declared heirs of Juan Bautista Vélez Arce because they were blood nephews and nieces of the afore-mentioned Juan Bautista Vélez Arce. As the natural child, Luz María Vélez Román, alleges, she was not personally notified of said request, although petitioners knew that she was the natural child of Juan Bautista Vélez Arce, although an edict was published directed to the alleged heirs of Juan Bautista Vélez Arce.

After having obtained the corresponding declaration of heirship, the defendants-appellants filed in the same Arecibo Court, on August 5, 1954 an unlawful detainer proceeding against Carmelo Rodríguez Franqui—husband of Luz María Vélez Román, as we have seen—alleging that the dispossessors are the sole and absolute owners of the house and of the estate which are the object of the proceeding because they inherited

it from Juan Bautista Vélez Arce; that when Juan Bautista Vélez Arce died (1943) the dispossessors allowed respondent and his wife to occupy and live the described house without paying any rental whatsoever until such time as the dispossessors needed the same, that the dispossessors have recently requested respondent to vacate the house, and surrender it to the dispossessors, which he has refused to do, occupying the same without the consent of the dispossessors and against their express will.

On the other hand, plaintiff-respondent Luz María Vélez Román, assisted by her husband Miguel del Carmen Rodríguez Franqui, on November 1, 1954, brought an action in the same Arecibo Court, for the annulment of the birth certificate, annulment of declaration of heirship, filiation and declaration of other rights, alleging to be the sole and universal heir of her father Juan Bautista Vélez Arce, that she was born on July 17, 1912, in the municipality of Camuy and was the daughter of Juan Bautista Vélez Arce and Tomasa Román, although she appears in the birth certificate as the recognized natural child of Tomasa Román and not as the daughter of her aforesaid father Juan Bautista Vélez Arce and plaintiff did not take any steps to obtain her recognition as a natural child because she had always been under the impression that she was already recognized as a natural child by her afore-mentioned father, since she had lived from her birth with her father while he was also living with plaintiff's mother and her father treated her publicly as his natural child, signing as said father, public documents which established her as his daughter and allowing her to use his paternal surname; that defendants Angel, Francisco, Celia and Virginia forced their acknowledgment as nephews and nieces, respectively of Juan Bautista Vélez Arce, alleging that their mother was a daughter of Julia Arce, who was in turn the mother of Juan Bautista Vélez Arce; that the above-mentioned Rosario Franqui was not the daughter of Julia Arce, and even if she was, she could not be recognized as such because her birth was not

recorded until April 9, 1954, that is, many years after her alleged mother Julia Arce, and her alleged brother Juan Bautista Vélez Arce had died, the birth certificate of Rosario Franqui being therefore fraudulent; that making use of the birth certificate made in the above-mentioned manner, defendants had the court declare them as the sole heirs of Juan Bautista Vélez Arce, as nephews and nieces of the latter, in a declaration of heirship, which was not notified to plaintiff, nor was she included as a party in said proceedings, despite the fact that said defendants knew and know that plaintiff is the daughter of Juan Bautista Vélez Arce; that making use of said declaration of heirship defendants filed an action of unlawful detainer against co-plaintiff Carmelo Rodríguez Franqui, plaintiff's husband, without having notified plaintiff or having made her a party in the proceedings.

Based on these allegations the following was requested: (1) the declaration that Rosario Franqui is not and was not the daughter of Julia Arce, and in the event that she was, she could not appear as a recognized natural child of said alleged mother, because the birth certificate was recorded on April 9, 1954 and it is null and void and its cancellation should be ordered in the Registry of Vital Statistics; (2) the declaration that Rosario Franqui was not Juan Bautista Vélez Arce's sister, and if she was, she could not appear as such sister because her birth had not been timely recorded; (3) the declaration that defendants, Angel Francisco, Celia and Virginia Franqui are not the nephew and nieces respectively, of Juan Bautista Vélez, and if they are, they should not appear as such, and therefore, may not be declared heirs of Juan Bautista Vélez Arce; (4) the declaration that Luz María Vélez Román is a recognized natural child of Juan Bautista Vélez Arce; (5) the declaration that the estate, object of the proceedings, belongs to plaintiff Luz María Vélez Román.

Defendants answered generally and specifically denying the facts alleged in the complaint and among other special affirmative defenses they alleged: "(2)—That the alleged ac-

tion for filiation is barred. This allegation is based on the fact that since plaintiff Luz María Román was born on July 17, 1912, at the time of the filing of the complaint, she was 42 years old, more than 19 years having elapsed, at the time of the filing of the complaint, since the time she could have brought her action" and "3—That the alleged action for filiation being barred, plaintiffs are estopped from challenging the registration of Rosario Franqui Arce's birth, as well as the declaration of heirships of the predecessor of the defendant, Juan Bautista Vélez Arce, since said plaintiffs lack legal standing to challenge the afore-mentioned birth registration and the declaration of heirship because they are persons alien to the case."

Before the issues raised were decided, plaintiffs filed a complementary complaint where they stated: "That after the filing of the original complaint in the case at bar, which is made part of this allegation, plaintiffs found documents of said plaintiff's father which constitute indubitable papers wherein said predecessor recognizes his paternity over plaintiff Luz María Vélez Román, of which documents plaintiffs knew nothing until some fifteen days ago, and which are described as follows: three report cards of the schools where said plaintiff was studying, one issued on June 2, 1923, another on June 19, 1925, and the other on June 24, 1927, the first signed by G. Quiñones, Principal of the J. J. Acosta School in the municipality of Camuy; the second by S. Sepúlveda as Acting Principal of said school and the last by Saldoina Domenech, Acting Principal of said school; all three report cards having been signed by Juan Bautista Vélez Arce, as father of said plaintiff and which are made part of this allegation so that they may be inspected by defendants in the suit at bar as ordered by this court."

Defendants answered this new allegation denying generally and specifically the facts and reproduced the plea of prescription. Subsequently, defendants requested a separate trial, pursuant to Rule 42 (b) of the Rules of Civil Procedure

of Puerto Rico, in order to dilucidate the plea of prescription related to the filiation of plaintiff Luz María Vélez Román.

On August 5, 1955, after having received the evidence and heard the proper arguments, the trial court rendered a decision granting the plea of prescription. As a question of fact it decided: "that plaintiff had her elementary schooling in the town of Camuy, during the years 1923, 1925, and 1927; that plaintiff's report cards corresponding to the first, third and fifth grades of the afore-mentioned years 1923, 1925, and 1927 are signed by Juan Bautista Vélez Arce in a space under which the following is printed: 'Signature of Parent or Guardian'; it was further established that the afore-mentioned report cards were delivered to plaintiff in the school and she took them home where she obtained Juan Bautista Vélez Arce's signature; that plaintiff knew about said documents since the time when Vélez Arce signed those report cards, but she had not been able to find them."

As a question of law it decided: that the filiation actions are governed by the law existing at the time of a child's birth; that since plaintiff Luz María Vélez Román was born on July 17, 1912, the law applicable was § 126 of our Civil Code, as amended by Act No. 73 of March 9, 1911, which provides: "The action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death except in the following instances: 1. If the father or the mother shall have died during the minority of the child, in which case, the child may bring his action before the first four years of his having attained his majority shall have elapsed. 2. If after the death of the father or mother there shall appear a written statement or document, of which no notice was previously had, wherein the child is expressly recognized. In this case the action shall be established within the next six months after the document has been discovered"; the father having died on August 17, 1943, plaintiff was more than 31 years old at the time of his death, so that she only had one year to bring the action after

his death and the action having been filed on November 1, 1954 the right to bring such an action was barred; that regarding the complementary complaint, plaintiff knew about the existence of such papers before Juan Bautista Vélez Arce's death—from the findings of fact it appears that plaintiff knew about said documents but had been unable to find them—for which reason her action would not prosper either, according to subdivision 2 of § 126; that assuming that plaintiff did not know about said documents, the latter do not constitute the authentic documents to which the case law refers.

On August 9, 1955 the Clerk of the Arecibo Court notified the decision on the plea of prescription but in the official printed form employed for the notice of judgment, and on August 19 of the same year, plaintiffs filed a motion requesting that judgment be rendered in the usual manner. On September 6, 1955 the Arecibo Court, on the grounds set forth in its decision of August 5, 1955 rendered judgment granting the plea of prescription and dismissing the complaint. The parties were notified of the judgment on September 8, 1955.

On September 27, 1955, plaintiff represented by another attorney, filed a motion for reconsideration and a special request to set aside the judgment alleging: (1) that the complaint in this case may not be considered or interpreted properly as an action of filiation; (2) ...; (3) because although it may be considered and said that an action of filiation is brought, in the complaint it must be likewise concluded that other actions are instituted which are not disposed of by the plea of prescription, such as nullity of the birth certificate, nullity of declaration of heirship and declaration related to the ownership of the estate, the possession and title of which is claimed by plaintiff. The defendants-appellants opposed the reconsideration and the request to set aside judgment, alleging in the first place, that upon the action of filiation being declared barred, plaintiff Luz María Vélez lacks legal standing to obtain the other pronouncements sought.

On November 1, 1955 the hearing of the above-mentioned motions was held with the appearance of both attorneys who introduced the evidence. The court found that the evidence admitted showed that Rosario Franqui's birth was recorded on April 9, 1954 and that she died on November 20, 1930 and her alleged brother Juan Bautista Vélez Arce on August 17, 1943. It then held the following: "The court, in view of the fact that the declaration of heirship of Juan Bautista Vélez has been challenged as fraudulent, and, that defendants also challenge the right of heirship alleged by plaintiffs upon deciding, if it were so decided, that the declaration of heirship is fraudulent, an opportunity which should be given to the parties to offer the evidence, then defendants would not have the power to challenge plaintiff's right, for which reason the court, in order to do substantial justice to the parties, decides to grant, as it hereby grants, the motion for reconsideration and sets aside the order of August 5, 1955, concerning prescription as well as the judgment of September 6, 1955."

On appeal defendants-appellants assign the following errors: (1) the trial court acted without jurisdiction in entertaining the Motion for Reconsideration and in reconsidering its judgment; (2) the trial court erred in dismissing the plea of prescription of the cause of action of filiation; (3) the trial court committed error in deciding that Luz María Román had standing despite the prescription of her action of filiation, to challenge the birth certificate of defendant's mother and the declaration of heirship of defendant's predecessor; (4) the trial court committed error in deciding that the complaint and the complementary complaint in this case stated sufficient facts to constitute a cause of action in favor of plaintiffs and against defendants.

1. As it may be recalled, on December 30, 1954, the defendants-appellants requested the trial court to set for hearing and separate trial, pursuant to Rule 42(b) of the Rules of Civil Procedure of Puerto Rico of 1943 (Rule 38.2 of 1958) the possible prescription of the action of filiation under § 126

of our Civil Code. After the separate trial was held, on August 5, 1955, the trial court rendered a decision granting the plea of prescription and hence dismissing the complaint, which decision was notified to the parties on August 9, 1955. On August 19, that is, within the term to move for reconsideration or to appeal from said judgment, plaintiffs requested that judgment be rendered in the same terms in which the decision was couched and the trial court, on September 6, 1955, rendered judgment confirming its decision of August 5, 1955 and also ordering plaintiffs to pay the costs plus $200 for attorney's fees for defendant.

Perhaps this was unnecessary but it is not illegal. In the first decision, following the rule of the better practice, it was not made clear that there being involved a demurrer which disposed entirely of the issues in controversy, all of them were decided by the same decision. Besides, the failure to impose costs and attorney's fees rendered the judgment defective and the court took advantage of the new motion to reform its former decision. The parties were notified of said judgment on September 8, 1955 and the motion for reconsideration of judgment, or in the alternative, to set aside the same, was filed on September 27, when said judgment had not yet become final (*firme*).

This may not have been considered as a typical motion for reconsideration, because it was filed untimely, but it could always be considered as a motion to set aside a judgment because in the opinion of the court "the refusal to take such action might be inconsistent with substantial justice. (Rule 61 of 1943; Rule 50 of 1958)." The very language used by the court shows that it had in mind this thought: "upon deciding, if it were so decided, that the declaration of heirship is fraudulent, an opportunity which should be given to the parties to offer the evidence, then defendants would not have the power to challenge plaintiffs' right, for which reason the court, *in order to do substantial justice to the parties*, decides to grant, as it hereby grants, the motion for

reconsideration and sets aside the order of August 5, 1955 concerning prescription as well as the judgment of September 6, 1955." (J. R. 34)

This is an unusual case wherein any excessive procedural legalism could sanction an irretrievable injustice as we shall see hereinafter. This being so, we should not be surprised at the action of the trial court in restoring the right of both parties to prove their allegations.

2. This is not the appropriate moment to determine whether the action is barred. It may be a question of a typical action for filiation the prescription of which is governed by § 126 of the Civil Code, as it may have been reformed by paragraph one of Art. II of our Constitution and Act No. 17 of August 20, 1952 or of an action for the petition for inheritance in the possession of a third person: *Alonso* v. *Muñoz*, 76 P.R.R. 512, 521 (Ortiz) (1954) and Guaroa Velázquez— *Sucesiones*, p. 71 (mimeographed edition of 1947), in which cases the term of prescription would differ.

3. There is no doubt that Luz María Román has standing to impeach the birth certificate of defendants' mother and the declaration of heirship of defendant's alleged predecessor. The registration in the Registry of Vital Statistics of Puerto Rico does not constitute by itself an uncontrovertible statement of a filiatory fact. In *Ex parte Otero*, 77 P.R.R. 713, 721 *et seq.* (Belaval) (1954) we reasoned this statement as follows:

"After 1911 the first special Law of Civil Registry which is wholly Puerto Rican, Act No. 61 of March 9, 1911, was in force, § 1 of which, as amended by Act No. 46 of March 7, 1912, [p. 87], provides: 'Acts concerning the civil status of persons shall be recorded in the register kept for such purpose, which shall be known as the Civil Register.' The Civil Code of 1930, on the other hand, provides in § 250 that 'the records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or when a litigation is instituted before the courts.' But when Act No. 24 of

April 22, 1931, 'An Act making the necessary provision for the registration of births, marriages and deaths, and for the other purposes,' known as the 'Vital Statistics Registry Act of Puerto Rico' which expressly repealed 'Act No. 61, of March 9, 1911, as subsequently amended, and all laws, or parts of laws, decrees or resolutions in conflict herewith', was adopted, it provided in § 38: 'On petition of any interested person, the Commissioner of Health, or a person by him authorized, shall furnish a certified copy of any birth, marriage or death certificate which has been recorded or registered in the general registry in accordance with the provisions of this Act . . . a copy of the record of any birth, marriage or death, after being certified by the Commissioner of Health or by any person by him authorized, shall constitute prima facie evidence before all courts of justice of the facts set forth therein . . .' This provision remains unchanged through all the amendments which have been made in § 38 by Act No. 25, of April 17, 1936 [(1) p. 212], Act No. 112 of May 6, 1941 [(1) p. 792], Act No. 99, of May 12, 1943 [p. 266], and Act No. 188, of May 2, 1951 [(1) p. 470].

"There is no doubt then that since the passage of the Vital Statistics Registry Act of Puerto Rico the birth certificate has lost its conclusive character as a document sufficient to prove the civil status of a person. It became a prima facie document which means its sufficiency is recognized until the true facts of filiation are established by another type of proof. On reflection it is evident that this method is the most scientific as well as the most practical way of settling problems arising from the public registration of civil status. As a matter of fact, the registry of births is compiled through oral information supplied by interested parties, at times by persons who are not the progenitors. It could be dangerous to concede a conclusive character to a document which is compiled through oral information from only one party. As a question of reality, it is important for a political or legal order to have an easy system of registration of births, marriages, deaths, as well as of other legal acts which define the civil status of a person, for purposes of census taking, military conscription, electoral registration, or statistical services.

"Since the contents of the document merely constitute prima facie evidence of the fact of birth and of the civil status of the person registered, it is undeniable that by a birth registration nothing is irrevocably established or binding against the public

interest or the interest of third persons, and we should not feel fearful that any registration, rectification, correction, addition, or amendment of an earlier registration in the Vital Statistics Registry, will be equivalent to a declaratory judgment of filiation."

The declaration of heirship is always granted without prejudice to a third party with a better right. Therefore, then, neither the fact that the registration was performed in the unusual manner in which it was done, nor the declaration of heirship based on said registration, is free of the impeachment to which some person with some interest in the property is entitled. It is unquestionable that plaintiff's possession in this case is sufficient to establish an adverse interest which should be heard in the corresponding plenary proceeding.

4. In order to be consistent with their own position in this case, the action which defendants should have brought is that of petition for inheritance, in which after establishing their own status of heirs in a conclusive manner, they request the possession of the property in the hands of a third party, and not an unlawful detainer suit. Having alleged the fact of concubinage *more uxorio* between Juan Bautista Vélez Arce and Tomasa Román, there arises, regarding said estate, the juridical situation of a partnership which has not been actually liquidated and any interest which might in effect correspond to Tomasa Román in that partnership would belong today to her daughter Luz María Vélez Román, plaintiff herein: *Danz* v. *Matías Suau Ballester et al., ante,* pp. 591, 592 (Belaval) (1961). In view of the foregoing the unlawful detainer suit would not prevail either because of a conflict of titles.

By virtue of a certain distortion in the logical and equitable proceedings of this case, defendants do not attempt to give an account of their title and obtain a favorable judgment exclusively on the ground of prescription of plaintiff's filiatory right. Such a situation should not be favored by any court of justice. This is not the appropriate time to decide

whether the documents presented with the complementary complaint are authentic documents, in view of the new interpretation which this Court has been forced to make in the cases submitted after the enactment of our new constitutional statute, since the trial court set aside its former decision and previous judgments on the matter. But it should be borne in mind by the trial court when this case returns to be heard before it that it is not possible to continue applying the strictness of the Spanish jurisprudence after our constitutional reform.

It is unquestionable that plaintiff has sufficient interest to oppose defendants' almost unilateral claim and possibly, after having examined the case in the merits, she may appear to be the sole heiress of Juan Bautista Vélez Arce and Tomasa Román's property.

In view of the foregoing the judgment rendered is affirmed.

Mr. Justice Pérez Pimentel and Mr. Justice Serrano Geyls concur in the result.